NATIONAL AIRLINES, Inc. v. ALLSOPP.

No. 12911.

United States Court of Appeals, Fifth Circuit.

May 12, 1950.

Rehearing Denied June 16, 1950.

W. Wallace Shafer, Lakeland, Fla., Ed R. Bentley, Lakeland, Fla., for appellant.

E. Snow Martin, Lakeland, Fla., for appellee.

Before HUTCHESON, Chief Judge, and WALLER and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging willful and wanton ejection from an aeroplane on which he had engaged passage from Tampa to New York, plaintiff prayed damages, actual and exemplary, as itemized in his bill of particulars,[1] in the amount of $25,000.00.

His claim in substance was: that, having reserved and paid for his passage and been checked in at the airport for the flight in question, he was later advised that the flight was oversold by three seats and requested to accept cancellation of his reservation and ticket; that he refused to do so because he felt that he was being discriminated against in favor of one Guthrie, a passenger who had purchased a ticket after he had; and that, notwithstanding the discrimination thus evidenced, the defendant wrongfully took his baggage off the plane, and after plaintiff had boarded the plane and taken a seat on it, defendant, with the aid of a dep-

uty sheriff, ejected him from it, and that the act of ejecting him from the plane was discrimination, willful and wanton.

The defenses were: a general denial; and, further, that there was no discrimination, because Guthrie, the person who arrived and was checked in ahead of plaintiff at the airport was the holder of a U.A.L. Script Card, which entitled him to pick his ticket up at the airport, and he had made his reservation on his card before plaintiff had; that defendant, in causing plaintiff's removal from the plane, had acted not wantonly and willfully, but in good faith and in accordance with regulations against a flight taking off with an overloaded plane; that as soon as defendant discovered that the plane had arrived overloaded and that to allow plaintiff to board and become a passenger on the plane would have violated the safety regulations, defendant immediately secured and offered to plaintiff alternate air transportation on a plane departing only a short time after the departure of flight 58; that it did not willfully and wrongfully remove plaintiff's baggage from the plane without plaintiff's knowledge or consent; and that it did not cause plaintiff to be arrested, imprisoned, or wrongfully evicted from the plane.

Recognizing that it had breached its contract by not providing plaintiff with the passage it had contracted to give him, defendant paid into court the full amount plaintiff had paid for his ticket and for excess baggage.

At a pretrial conference and argument, after the evidence was all in, the facts, none of which were or are in substantial dispute, were thoroughly canvassed, the respective theories of plaintiff and defendant were fully developed, and it was there agreed that, plaintiff having been checked in at the airport and accepted for passage on flight

**1.**          BILL OF PARTICULARS

Expense:

Charge for ticket and excess baggage .......................................$   73.40
Taxi to and from airport ...............................................   2.40
Hotel and food during 24 hour delay .....................................  15.50
For false arrest, humiliation, etc. ..................................... 24,908.70
                                                                         —————
                                                                        $25,000.00

58, the defendant, by not carrying him on that flight, had breached its contract and was liable because of the breach for his actual damages.

As to the actual damages, the only difference between plaintiff and defendant was that defendant insisted that these damages were limited to the amount tendered, whereas plaintiff's position[2] was that they also included hotel accommodation and taxicab costs, as set out in his complaint. The real contention between plaintiff and defendant was, therefore, not over the actual damages for the breach of the contract, but over the claimed exemplary and punitive damages for his ejection from the plane.

It was defendant's position: that there was no discrimination, both because Guthrie had made his reservation ahead of plaintiff and because he had been checked in and accepted at the airport ahead of him; and, further, that if there was discrimination, defendant would not, it could not, be held liable for exemplary damages but only for breach of contract because the undisputed proof showed that, in cancelling Allsopp's reservation, whether its action was mistaken or right, it was taken in absolute good faith; and that it could not, therefore, be liable for exemplary or punitive damages for breach of its contract to take Allsopp on the flight, but only for actual damages.

As to the damages claimed for the ejection, its position was that Allsopp had brought this on himself by insisting on boarding the plane after he had been notified that he would not be carried on that flight, and his baggage had been removed.

Tried to a jury, when the evidence was all in, though there were slight discrepancies in verbiage, there was no substantial conflict in the facts testified to.

On the claim of priority, as between him and Guthrie, stressed by plaintiff and accepted by the trial court, the record presents no disputed issue of fact.

On account of Guthrie's inability, because of illness, to attend the trial, defendant, while able to prove that he had made his reservation on his script card[3] before he picked his ticket up, was unable to prove the precise time that the reservation was made. Plaintiff had made his reservation and paid for his ticket at the same time, four days before he came to the airport. Guthrie, who had secured his reservation

---

2. See statement of Martin, plaintiff's counsel, Rec. p. 237.

3. This was the testimony as to script transportation of the kind that Guthrie held:

Q: For the purpose of clarifying that situation, will you please tell the Court and jury what is referred to by script transportation?

A: Script transportation is a form of charging air travel. An individual or corporation or partnership may establish what is termed an air travel plan, a contract between themselves and issuing carrier. They are then given air travel cards. To obtain these cards the corporation or the individual deposits $425.00 with the carrier and that remains on deposit until such time as the contract is terminated by either party. All travel done under script is then billed to the card holder or to the corporation that established the account. In other words, you don't pay for it when you buy it. You are given a script card, which is similar to a charge plate.

Q: Do you have a sample of that card?

A: Yes.

Q: Will you exhibit it, please sir? Is this a script card similar to that which R. R. Guthrie was holding as of that date?

A: That is the same type of card. The face or form may have been changed, but I believe that type was in effect in 1947.

Q: Explain the mechanics of charging it.

A: This is a transportation receipt that is used in connection with the script card or air travel card. The card is placed in a special holder, and this sheet is inserted and an imprint is made where this appears on the metal plate.

Q: On the back of this card?

A: On the face of this form—the ticket form and ticket number and the point of travel are written in by the agent issuing the ticket, the airline, and whether it is one-way or round trip ticket. The fare, the Federal tax, and any excess baggage used at that time, and the total, and it is signed on the bottom by the card holder. And that, plus several accompanying duplicates are then sent to the accounting department of that certain airline, and they bill from there.

on a credit card and, therefore, did not have to pick his ticket up until he reached the airport, arrived at the ticket counter at the airport ahead of plaintiff. He there, still ahead of plaintiff, had had issued to him, and had picked up, his ticket, and he was then and there checked in and accepted as a passenger ahead of plaintiff. This was some time before flight 58 came in and defendant had discovered that the flight onward from Tampa was oversold by three. When the flight arrived, this was discovered, and defendant found that it would be compelled to cancel three of the reservations, the plaintiff's being one of them. It proceeded to, and did, do so without serious discussion or difficulty with any of the three except plaintiff.

Plaintiff having seen the ticket issued to Guthrie, after he had already bought his, and not aware that Guthrie had already paid for it by purchasing it on his script card, insisted that defendant, by not bumping Guthrie instead of him, was discriminating against him in favor of Guthrie.

Refusing, after many interviews, to accede to the defendant's cancellation of his ticket, and having seen his baggage taken off the flight, at the order of the flight captain after the captain had told him and he knew that he would not be carried on it, plaintiff deliberately boarded the plane, anticipating trouble either in being refused entry or in being put off, with the purpose of getting and remaining on unless and until ejected by force.

The evidence standing thus, plaintiff, insisting that he had been discriminated against and that he was entitled to board the plane, urged upon the court that a ver-

dict should be instructed in his favor, not only for actual, but also, for exemplary and punitive damages, leaving to the jury only the amount of such damages.

Defendant, opposing this view while insisting that plaintiff had not been discriminated against and that, in the situation then existing, it was the duty of the company, acting in good faith, to reduce the overload in the way that it did, put its main reliance, for its claim that a verdict should be directed against plaintiff's claim for exemplary or punitive damages for the eviction, upon the undisputed fact that plaintiff had brought the eviction about by his own conduct in boarding the plane.

In the alternative, defendant asked, and excepted to the refusal of, charges, which, because we agree with defendant that a verdict should have been directed for it on the issue of exemplary and punitive damages, we find unnecessary to set out or comment upon.

The district judge, under a clear misapprehension, as evidenced by his statement, "They sold Mr. Guthrie a ticket there that morning, and put him on the plane in preference to Mr. Allsopp", of the effect and operation of a script card such as Guthrie held, was of the firm opinion that, in cancelling Allsopp's reservation and grounding him, while letting Guthrie go on, the defendant was guilty of wrongful discrimination as a matter of law, and he so charged the jury.[4]

As to plaintiff's action in boarding the plane, the district judge agreed with defendant that if plaintiff boarded the plane after he knew that his accommodation on that flight had been cancelled and he would

---

4. "Now public service carriers are not allowed to unreasonably discriminate as between passengers—patrons, and the facts in this case, undisputed, are that that transportation was sold to this Mr. Guthrie after transportation was sold to the Plaintiff, and that Mr. Guthrie was allowed to board the plane and go on to his destination. And that amounted to an unreasonable discrimination, Gentlemen, under the Law, as the Court interprets the law."

"Now what method the defendant sought to exercise or use in determining which passengers should be allowed to make the trip when they say they were overloaded—that method is not in the testimony at all. We don't have that established here. But we do know, uncontradicted, that there was one passenger at least who bought and received his contract of transportation after Mr. Allsopp did, and he was allowed to make the trip. As I said at first, that alone constituted an unreasonable discrimination."

not be carried on it, the defendant would have been justified in using the means which were used to secure his removal, and, therefore, would not have been liable for any damages for the ejection. He disagreed, however, with its contention that the evidence established that he had done this as a matter of law, and he submitted the issue, as one of fact for the jury, whether he knew that his reservation had been cancelled and he would not be taken on that flight.

There was a verdict for plaintiff for $5000, and defendant has appealed.

Here defendant urges upon us: that the district judge erred in not directing out of the case the claim for exemplary and punitive damages for ejecting plaintiff from the plane; and that the judgment must be reversed with directions to award plaintiff only the actual damages for the breach of contract of carriage.

In the alternative, it insists that the judge committed highly prejudicial error in instructing the jury that, as matter of law, defendant discriminated against the plaintiff, and further erred in not giving the charges defendant had requested.

We are in agreement with appellant: that what the judge submitted to the jury as an issue of fact, whether plaintiff's reservation had been cancelled with his knowledge that he would not be carried on the flight, was established by the evidence, as matter of law; [5] that while a verdict should have been directed for him for his actual damages for breach of the contract of carriage, the verdict should have been directed against him on his claim for exemplary and punitive damages; and that the judgment must be reversed and remanded with directions to enter judgment accordingly.

Because we are of this opinion, and this renders unnecessary a decision on any of

---

5. Plaintiff testified that at the first conference they had with defendant's officers, they told him and Mr. Milman, the other passenger: "Gentlemen, we will have to ask you to cancel your tickets because we have oversold this plane by two tickets." And that he told them he would not surrender his passage, and Mr. Milman said the same thing.

If this conference left him in any doubt whether he was being asked if he would, or was being told that he must, cancel his reservation, this was soon dispelled, the evidence showing that in about 15 minutes he was again called and went through the same proceeding and then in thirty minutes more, he was ushered into the presence of the captain who said, "Where is your baggage check?" He said, "What do you want it for?" The captain said, "Don't you want your baggage?", and he said, "I certainly do. I want it right where it is, on that plane." The captain said, "It isn't going to be there. You give me your baggage check because this passenger has your place." He said, "I am sorry, Captain, but I don't intend to surrender it."

He testified further that, after that he was in the enclosure, and he saw the porter go over and take his bags off the plane and walk back with them into the office.

Q: So, Mr. Allsopp, you knew that your baggage had been located on the plane, identified, and unloaded before you left the compound for the purpose of boarding that plane, did you not?

A: Very definitely I knew it, much against my wishes.

Q: And how long was it from that time on until the gate was opened and the departure of the plane was announced.

A: Within five or ten minutes.

Q: And your baggage had been unloaded and you knew that your baggage had been unloaded prior to that time?

A: Yes, Sir.

Q: And Mr. Allsopp, you knew that you were going to make an issue of your entrance onto that plane, did you not?

A: I did. I assure you I did. After the way I had been treated, I certainly did intend to make an issue of it.

Plaintiff also testified as to the captain's manner when he asked him for his baggage check:

"He was peremptory and domineering and appeared to be accustomed to telling passengers what was what."

When a fourth call came for Allsopp, he declined to answer it.

Q: On your way to the plane, was there an attempt on anybody's part to stop you.

A: No. I anticipated it but to my surprise no one did anything. I had no difficulty whatever. I walked in with the rest of the passengers.

them, we pass without discussing or deciding all the other questions raised, including the ones of priority and of discrimination vel non.

Reversed and remanded with directions.

WALLER, Circuit Judge, (specially concurring.)

I concur in the judgment. I agree that this is not a case for the infliction of punitive damages for the reasons set out in the majority opinion, and also because, even though there was a failure to recognize the prior right of Allsopp to transportation, such failure was not willful or wanton, malicious or oppressive, but was the result of a series of unintentional errors. Some of these errors were: (1) The agent on the foreign desk who issued Guthrie the ticket and who also accepted Allsopp's ticket for transportation was mistaken as to the number of seats available. (2) The Cuban office of the Defendant made a mistake in not notifying the Tampa office that the plane had taken on three additional passengers in Cuba. (3) The agent who issued the ticket to Guthrie and issued to Allsopp the authorization slip to board the plane acted on a manifest furnished by the uptown office of the Airlines on which manifest Guthrie's name appeared but Allsopp's did not. There was, therefore, a mistake in not having Allsopp's name on that manifest. (4) This agent in issuing the ticket to Guthrie had an erroneous idea that the holder of a credit script such as held by Guthrie had some sort of prior right to transportation. (5) The uptown office made a mistake in not noting and preserving a record of the time that Guthrie had made his reservation. (6) The agent erred in calling Allsopp over the long distance telephone in Lakeland on the morning in question advising him that he would be furnished transportation on that particular plane. All of these mistakes were unintentional and in no sense malicious, wanton, or so gross as to give rise to the recovery of punitive damages.

Punitive damages are not inflicted in order to punish for non-willful or unintentional errors, and the failure of the Company to transport Mr. Allsopp on the plane in question was, without doubt, the result of one or more of the errors aforementioned. The embarrassment, humiliation, etc., of which the Plaintiff complains, was a web of his own weaving, brought about by his having undertaken to ride the plane at all events. I am of the view, however, that the evidence clearly shows a prior right in Mr. Allsopp to ride the plane in question. He purchased and paid for a ticket on Wednesday, four days before, and on the Sunday morning in question the Airlines Company telephoned Mr. Allsopp at the home of his brother in Lakeland, Florida,—some distance from Tampa—and advised him that he could have space on the plane that day, and Mr. Allsopp advised that he would be on hand. At that moment the Airlines accepted Allsopp for transportation on that plane, and this occurred quite awhile before Mr. Guthrie ever presented himself at the Airlines office for a ticket. Mr. Allsopp was not advised over the long distance telephone that, "We will take you on the plane today provided someone else does not come in ahead of you," but he was definitely advised that he could ride the plane. He not only had the reservation but he had the ticket.

The evidence wholly fails to show when Mr. Guthrie made his reservation except that it was some time prior to the Sunday in question.

Because of these facts, I think Allsopp had a prior right to ride the plane and was entitled to his actual damages for breach of the contract, but I think that since the breach was due to an error and not with any idea of willfulness, maliciousness, or wantoness, punitive damages should not be allowed.

RUSSELL, Circuit Judge (specially concurring).

I concur in the result, because the suit is predicated only upon the actual eviction of Allsopp from the plane and no question restricted to the wrong of the antecedent refusal to carry out the mutually accepted agreement to transport is presented. I agree that the evidence is insufficient to support any finding that Allsopp did not

know before he boarded the plane that his passenger status had been terminated. Furthermore, there is no claim here for actual or compensatory damages except for out of pocket expenses.